13:12:40

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


TOT POWER CONTROL, S.L.,        )
                               )
          Plaintiff,           )
                               ) C.A. No. 21-1305(MN)
v.                             )
                               )
SAMSUNG ELECTRONICS CO., LTD.,)
et al.,                        )
                               )
          Defendants.          )
_____)
                               )
TOT POWER CONTROL, S.L.,        )
                               )
          Plaintiff,           )
                               ) C.A. No. 21-1302(MN)
v.                             )
                               )
APPLE, INC.,                   )
                               )
          Defendant.           )
_____)
                               )
TOT POWER CONTROL, S.L.,        )
                               )
          Plaintiff,           )
                               ) C.A. No. 21-1304(MN)
v.                             )
                               )
LG ELECTRONICS, INC., et al., )
                               )
          Defendants.          )


                    Wednesday, June 15, 2022
                    10:00 a.m.
                    Teleconference


                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge

APPEARANCES:


                    FARNAN LLP
                    BY:  BRIAN E. FARNAN, ESQ.

                    -and-

                    HAUSFELD LLP
                    BY:  WALTER D. KELLEY, JR., ESQ.
                    BY:  BRIAN A. RATNER, ESQ.
                    BY:  TARA R. ZURAWSKI, ESQ.
                    BY:  BRUCE J. WECKER, ESQ.


                           Counsel for the Plaintiff

10

11                  YOUNG CONAWAY STARGATT & TAYLOR, LLP
                    BY:  ADAM WYATT POFF, ESQ.
12
                    -and-
13
                    AXINN, VELTROP & HARKRIDER LLP
14                  BY:  PAUL ZEINEDDIN, ESQ.
                    BY:  JOSHUA S. REISBERG, ESQ.
15
                           Counsel for the Defendant
16

17
                    DLA PIPER
18                  BY:  BRIAN BIGGS, ESQ.
                    BY:  MICHAEL STRAPP, ESQ.
19                  BY:  AARON GIBSON, ESQ.
                    BY:  MATTHEW SATCHWELL, ESQ.
20
                           Counsel for Defendants Apple, Inc.
21                         and LG Electronics

22                  _ _ _ _ _ _ _ _ _ _

10:54:14 23

10:59:42 24           THE COURT:  Good morning, counsel.  Who is

10:59:42 25    there, please?

11:01:49 1          MR. FARNAN:  Good morning, Your Honor.  Brian

11:01:54 2   Farnan on behalf of the plaintiff.  And with me is Walter

11:01:58 3   Kelley, Brian Ratner, Tara Zurawski and Bruce Wecker, all

11:02:04 4   from Hausfeld.

11:02:05 5          THE COURT:  Good morning.

11:02:06 6          MR. BIGGS:  Good morning, Your Honor.  Brian

11:02:08 7   Biggs from DLA Piper on behalf of the two of the defendant

11:02:12 8   groups.  First on behalf of Apple, Inc., also with me are

11:02:15 9   Aaron Gibson and Michael Strapp of DLA Piper as well as two

11:02:19 10  client representative, Garrett Sakimae and Risa Amad.  And

11:02:23 11  on behalf of LG, the LG defendants with me is Matt Satchwell

11:02:28 12  also of DLA Piper.

11:02:29 13         THE COURT:  All right.  Mr. Biggs, this is your

11:02:34 14  week in front of me.

11:02:35 15         Okay.  And how about for Samsung?

11:02:40 16         MR. POFF:  Yes.  Good morning, Your Honor.  Adam

11:02:43 17  Poff from Young Conaway.  And with me from Axinn Veltrop we

11:02:46 18  have Paul Zeineddin and Josh Reisberg.  And also Samsung's

11:02:49 19  in-house counsel, Arvind Lyengar.

11:02:52 20         THE COURT:  Good morning to all of you as well.

11:02:54 21         So I have before me the three motions to dismiss

11:02:57 22  as well as the motion to transfer from Apple.  Let's talk

11:03:01 23  about the motions to dismiss first.  Most of them are

11:03:07 24  similar in that they make the same arguments on willfulness

11:03:11 25  and enhanced damages and pre-suit damages, though I think

11:03:16 1    Apple has some additional allegations in there on direct

11:03:20 2    infringement.

11:03:21 3            So who wants to go first?  How have you guys

11:03:27 4    decided to talk about this?

11:03:29 5            MR. STRAPP:  Your Honor, this is Michael Strapp

11:03:31 6    from DLA Piper on behalf of Apple.  We would like to go

11:03:34 7    first with respect to the direct infringement claims that

11:03:37 8    are unique to the Apple motions and then we will turn it

11:03:40 9    over to Samsung counsel who will provide some argument with

11:03:44 10   respect to the other aspects of the motion which are common

11:03:47 11   to all defendants.

11:03:49 12           THE COURT:  Sounds good.  Okay.  Mr. Strapp.

11:03:52 13           MR. STRAPP:  Yes.  We want to point out

11:03:55 14   specifically a couple of defects with the direct

11:03:58 15   infringement claims here and highlight those defects in this

11:04:02 16   argument.

11:04:03 17           First, there is no identification of any

11:04:05 18   specific Apple device in the TOT complaint that allegedly

11:04:10 19   infringes the asserted patent.  And then second, there is

11:04:12 20   inadequate factual support for the infringement allegations

11:04:16 21   in the complaint.  So with regard to point one, TOT defines

11:04:21 22   accused products in its complaint as essentially mobile

11:04:25 23   products that contain components which practice the patented

11:04:28 24   invention.  It does include a parenthetical, TOT does

11:04:32 25   include a parenthetical that says "e.g., iPhones, iPads and

11:04:37 1    Apple watches," but that's about it as far as specificity in

11:04:41 2    the complaint.

11:04:42 3           TOT also references date stamp processors of

11:04:47 4    Qualcomm and Intel as components that allegedly infringe the

11:04:51 5    patents.  But TOT never identifies in the complaint any

11:04:55 6    particular Apple product that includes these allegedly

11:04:58 7    infringing Qualcomm or Intel baseband processors.

11:05:02 8           Now in its opposition brief, TOT contends what

11:05:05 9    it's done in its complaint is sufficient and it cites

11:05:09 10    several district court cases and a Federal Circuit case.  We

11:05:13 11    have taken a look at all of those cases and each of those

11:05:16 12    cases is easily distinguishable from the facts here because

11:05:19 13    unlike the situation here where TOT has failed to specify

11:05:23 14    even a single Apple product it infringes, those cases all

11:05:27 15    involve complaints which include specifically accused

11:05:31 16    products that are identified by name or by model number in

11:05:35 17    the complaint of the plaintiff.

11:05:36 18           With regard to the second point in terms of the

11:05:39 19    deficiency with the direct infringement claims here, the

11:05:41 20    Federal Circuit recently explained in a 2021 decision in

11:05:42 21    Bott NA, a case which we cited in our briefing, that a

11:05:51 22    product cannot stand a claim for direct infringement by

11:05:55 23    "reciting the claim elements and merely concluding that

11:06:00 24    accused product has those elements."

11:06:02 25           And that's essentially what TOT has done here.

TOT's complaint, it doesn't include any attached claim chart.  It's not necessary to have a claim chart, but it also doesn't include specific factual support for the allegations of infringement.  What instead TOT's complaint does is regurgitates the limitations of the asserted claims and then follows each of those copied limitations with one or two conclusionary sentences alleging that unspecified Apple products practice the particular limitation TOT has just quoted.

I'll give you a couple of examples that are in there.  Claim 1 of the '865 patent which is one of the asserted claims here and one of the two asserted patents, it requires setting a specific target signal-to-interference ratio.  TOT doesn't identify any component of any Apple device that says any such term.  And then similarly claim 6 of the '376 patent, the other patent asserted, requires establishing a target signal-to-interference ratio by means of a "dynamic adjusting function."  Again, TOT doesn't identify any such function in its complaint.

So for both of these reasons, first that there is no specific product of Apple that is accused of infringement, and second, that because there is no adequate factual support for the infringement allegations, Apple request that the Court dismiss the direct infringement claims included in the complaint that TOT has asserted

11:07:30 1    against Apple.

11:07:32 2                    THE COURT:  All right.  Thank you.

11:07:34 3                    Who is going to handle that for the plaintiff?

11:07:38 4                    MR. KELLEY:  I will.  This is Walter Kelley in

11:07:43 5    Washington with the Hausfeld firm.

11:07:46 6                    Your Honor --

11:07:48 7                    THE COURT:  First of all, Mr. Kelley, let's just

11:07:51 8    be clear, all the claims that have been asserted or that are

11:07:55 9    mentioned in the complaint are method claims, right?

11:07:59 10                    MR. KELLEY:  No, that's actually not correct.

11:08:04 11    One of the patents is a method claim.  The second patent is

11:08:07 12    either device or apparatus, I can't remember which.

11:08:11 13                    THE COURT:  Okay.  Hold on.  Let's just make

11:08:14 14    sure.  I am looking at claim 1 which is the claim that you

11:08:17 15    go to in the patents, in the '865 it's outer loop power

11:08:24 16    control method, the method comprising, and in the '376,

11:08:30 17    outer loop power control method comprising the following

11:08:33 18    phases, establishing, calculating, estimating.  Where is a

11:08:40 19    device?

11:08:42 20                    MR. KELLEY:  In the '376 claim -- or excuse me,

11:08:47 21    in the '376 patent, if you look at claim 6 is an apparatus

11:08:52 22    claim.

11:08:52 23                    THE COURT:  And is that mentioned in the patent?

11:09:01 24                    MR. KELLEY:  You mean in the complaint?

11:09:02 25                    THE COURT:  Yes.  Sorry.  Complaint.

11:09:07 1           MR. KELLEY:  I believe so.  Let me double-check.

11:09:13 2   Yes, the illustrative claim that we used on the '376 is

11:09:19 3   claim 6.  That's in paragraph 52 of the complaint.

11:09:28 4           THE COURT:  Okay.

11:09:31 5           MR. KELLEY:  The illustrative claim that we used

11:09:34 6   for the other patent is claim 1 which is indeed a method

11:09:38 7   claim, but the patent also includes a device, and I believe

11:09:44 8   that's claim 5.

11:09:49 9           THE COURT:  Okay.  So you haven't gone through

11:09:51 10  that claim in the complaint?

11:09:55 11          MR. KELLEY:  No.

11:09:56 12          THE COURT:  It's claim 5 that we're talking

11:09:58 13  about.

11:09:58 14          MR. KELLEY:  That was the illustrative

11:10:00 15  independent claim that we used, yes.

11:10:03 16          THE COURT:  All right.

11:10:05 17          MR. KELLEY:  As far as --

11:10:07 18          THE COURT:  How about the specific products,

11:10:09 19  because you don't really have anything in here about what

11:10:12 20  products.  It can't be every single iPhone, iPad, there is

11:10:12 21  lots of versions of those, so what are you accusing?

11:10:22 22          MR. KELLEY:  We are accusing those mobile

11:10:25 23  devices that use the chips provided by Qualcomm and Intel.

11:10:29 24  And with respect to Qualcomm, we identify those specific

11:10:32 25  chips, the name that they use.  So the purpose of the

11:10:39 1   complaint is to put Apple on notice of first of what

11:10:44 2   products are being accused and it's no problem to know, for

11:10:47 3   them to know which of their products actually use the chips

11:10:50 4   that we're accusing.

11:10:56 5           Then the second component -- there are three

11:10:59 6   components here on pleading direct infringement, you

11:11:02 7   identify the product, you identify the patent, you explain

11:11:05 8   how it is that the product infringes.  And what we have done

11:11:10 9   is the claim here is based upon I'm going to call them

11:11:16 10  chips, they're baseband processors.  It's based upon that.

11:11:20 11  It's not based upon something that Apple does other than in

11:11:24 12  the chips.  And we go through claim -- limitation by

11:11:29 13  limitation in the illustrative claims and based on our

11:11:35 14  testing explain what it is that the chip does.

11:11:38 15          And so for purposes of putting Apple on notice,

11:11:42 16  which is the standard of what it is they should be looking

11:11:46 17  at and how it is they should be responding, it's very clear

11:11:52 18  to them which of their products include these chips.

11:11:58 19          As far as the inadequate support, I just touched

11:12:02 20  on that.  Again, because of the nature of this, this is not

11:12:08 21  something where you have a manual that is publicly available

11:12:12 22  that you can look to and cite as a reference point for

11:12:17 23  performing each of the limitations in the claim.  Instead

11:12:21 24  what we're basing our allegations on is testing that we have

11:12:27 25  done and how it is that the particular chips respond, or I

11:12:33 1   should say the Apple phones that contain those chips.  And

11:12:37 2   we recited the results of that testing.  It's not just a

11:12:41 3   recitation that they do it, it's based on the testing

11:12:46 4   itself.  We didn't reference the testing in there, but it's

11:12:49 5   a fair allegation based upon what we did.

11:12:53 6            THE COURT:  But why -- I mean, okay, maybe you

11:12:56 7   did that, but it really seems like all you did was say the

11:13:02 8   claim requires X, unspecified models of Apple products do X.

11:13:11 9   Where is it more specific than that?

11:13:16 10           MR. KELLEY:  Well, it's more specific by

11:13:18 11  reference to the chips which are the ones that actually

11:13:21 12  perform the functions.  And I am not sure just what you're

11:13:28 13  asking, but what we're --

11:13:30 14           THE COURT:  What I'm asking -- wait a second.

11:13:33 15  Don't say you're not sure what I'm asking, then ask if

11:13:37 16  you're not sure.  What I am saying is we heard that the

11:13:42 17  Federal Circuit in 2021 said you can't just say patent says

11:13:47 18  X, you do X, thank you.  There has to be something more.

11:13:52 19  Okay?  Maybe I'm not sure that's consistent with some other

11:13:56 20  things that we have seen in the Federal Circuit, but let's

11:13:59 21  say we're going with that.  I don't see where you have done

11:14:02 22  more than that.  Now maybe you can, but I don't see where

11:14:07 23  you have.  So if you think you have, tell me where

11:14:11 24  specifically in the complaint that is so I can look at it.

11:14:15 25           MR. KELLEY:  No, really what we have done is

11:14:21  1   recite what it does and we have used language that parallels

11:14:26  2   the claim terms.  So you're right in that respect.  The law

11:14:34  3   that I have seen has indicated that that is acceptable.  The

11:14:40  4   2021 Federal Circuit case I don't know changed that, but

11:14:45  5   you're right insofar as it goes, we have used the same

11:14:49  6   language because the chips that we have identified perform

11:14:53  7   the same thing.

11:15:01  8        THE COURT:  All right.  Mr. Strapp, anything you

11:15:05  9   want to say in response?

11:15:07  10       MR. STRAPP:  Just one point, Your Honor.  There

11:15:09  11  was a reference in my colleague's argument to pre-filing

11:15:14  12  testing of phones, Apple phones.  And the question that

11:15:19  13  immediately came to mind for me was if there was a pre-file

11:15:23  14  investigation done here and that included testing of

11:15:25  15  particular Apple phones and TOT concluded based on that

11:15:29  16  pre-filed investigation they had a Rule 11 basis to file a

11:15:32  17  complaint that those specific phones infringed, why couldn't

11:15:35  18  they specify in the complaint which phones infringed and

11:15:39  19  provide that detail to give Apple the notice it's entitled

11:15:42  20  to to understand exactly what's accused of infringement

11:15:47  21  here?

11:15:49  22       THE COURT:  Well, what about the assertion that

11:15:55  23  they tell you what chips and I guess that's what is being

11:16:02  24  said in paragraph 38 when it says manufacturers, the

11:16:02  25  wireless baseband processors include those -- kind of broad,

11:16:16  1    but let's just assume that you have some specifics here,

11:16:18  2    include those manufactured and sold by Qualcomm, including

11:16:23  3    Snapdragon X55 wireless baseband, and Intel including XMM

11:16:30  4    7660 wireless baseband processors.  Why isn't that

11:16:35  5    sufficient given that Apple knows which of its products

11:16:39  6    those have been incorporated into?

11:16:43  7            MR. STRAPP:  I think there is a few problems,

11:16:45  8    but one of the most prominent problems picks up on what Your

11:16:49  9    Honor noticed there with the language of includes.  The way

11:16:51 10    that this paragraph 38 and the corresponding paragraph 51

11:16:54 11    are drafted in the complaint, it's so sweeping and so broad

11:16:59 12    as to encompass potentially all Apple mobile products that

11:17:05 13    include any wireless baseband processors.  In other words,

11:17:11 14    the drafting here if you combine the first sentence and the

11:17:14 15    second sentence of paragraph 38, there is a reference to

11:17:17 16    mobile products which practice the inventions and then there

11:17:20 17    is a reference to all wireless baseband processors installed

11:17:24 18    in all Apple products, including those, but not limited to

11:17:28 19    any wireless baseband processors manufactured and sold by

11:17:33 20    Qualcomm and by Intel.  And that's -- I would suggest Your

11:17:38 21    Honor respectfully that's not adequate notice because it

11:17:41 22    doesn't provide Apple with any sort of limiting principle to

11:17:46 23    go out and investigate and attempt to defend against these

11:17:48 24    claims by understanding how to limit these allegations to a

11:17:51 25    specific class or particular model of products that

11:17:54 1    incorporate particular components that allegedly infringe.

11:17:58 2    And if there was some limiting principle, it's not obvious

11:18:02 3    to us reading the complaint the way it's drafted what that

11:18:05 4    limiting principle is.

11:18:07 5         And in any event, Your Honor, I would suggest

11:18:08 6    that if TOT has done some sort of pre-filing investigation

11:18:12 7    and determined through its testing that there are specific

11:18:15 8    products that infringe, it really would be very little

11:18:18 9    burden on TOT to include that information in its complaint

11:18:22 10   instead of forcing Apple to hunt through innumerable mobile

11:18:27 11   products that include unlimited wireless baseband processors

11:18:31 12   and trying to figure out what TOT is getting at when it

11:18:35 13   drafted these particular paragraphs of its complaint.

11:18:38 14        THE COURT:  Okay.  All right.  Let me hear on

11:18:40 15   the willfulness and related enhanced damages.

11:18:49 16        MR. REISBERG:  Thank you, Your Honor, this is --

11:18:52 17        THE COURT:  Sorry, go ahead.  Go ahead.  I'm

11:18:54 18   sorry, I didn't hear your name.

11:18:56 19        MR. REISBERG:  This is Josh Reisberg from the

11:18:59 20   Axinn firm representing the Samsung defendants.  I'll be

11:19:02 21   speaking on defendants' motions as they pertain to the

11:19:04 22   claims for enhanced damages based on willfulness and past

11:19:09 23   damages, but I can limit my discussion only to willfulness

11:19:12 24   if Your Honor prefers.  These two issues --

11:19:15 25        THE COURT:  Let's do willfulness and enhanced

11:19:17 1    damages, then I'll hear from plaintiff, and then we'll come

11:19:20 2    back and do the pre-suit notice.

11:19:24 3          MR. REISBERG:  Understood.

11:19:25 4          On the willfulness issue, I'll address the

11:19:28 5    substance of plaintiff's willfulness claims first.  And as

11:19:31 6    the Federal Circuit held in the *Read Corp. v. Portec* case

11:19:35 7    that the plaintiffs and the defendants rely upon in their

11:19:38 8    briefs, there can be no claim for enhanced damages unless

11:19:41 9    there is a sufficient claim for willfulness.  So the *Read*

11:19:45 10   *Corp.* case held there is no basis for enhanced damages

11:19:49 11   absent willful infringement.  If plaintiff's willful

11:19:52 12   infringement claim fails, then its enhanced damages claim

11:19:55 13   fails as well.  There is no independent basis on which

11:19:57 14   defendants are arguing for dismissal of enhanced damages.

11:20:01 15         So to be brief on the substance of plaintiff's

11:20:04 16   wilfulness claim, plaintiff points to no case holding that

11:20:08 17   allegations of third-party disclosure of the alleged

11:20:11 18   invention to Qualcomm or industry publicity relating to what

11:20:17 19   they referred to in their complaint as the alleged

11:20:20 20   invention, not the patent, are sufficient to plausibly plead

11:20:23 21   a claim for wilfulness, namely that the defendants possessed

11:20:26 22   actionable pre-suit knowledge of the asserted claims in the

11:20:29 23   alleged infringement.  They can't recite a plausible theory

11:20:32 24   under an actionable knowledge theory or under a willful

11:20:35 25   blindness theory which plaintiff raises for the first time

11:20:40 1  in its opposition brief.

11:20:42 2          Nothing in the complaint or in plaintiff's brief

11:20:44 3  attempts to connect those allegations in some plausible way

11:20:48 4  to any prong of the willful blindness standard let alone the

11:20:53 5  prong that requires that plaintiff plausibly allege that the

11:20:56 6  defendant took deliberate actions to avoid learning of the

11:21:02 7  existence of the asserted patents in the alleged

11:21:02 8  infringement.

11:21:03 9          Then plaintiff in its opposition goes beyond the

11:21:05 10 complaint in ways that other courts in this district have

11:21:08 11 summarily rejected.  Plaintiff first argues that its willful

11:21:12 12 blindness position is plausible because the defendants must

11:21:15 13 have engaged in due diligence before purchasing the

11:21:18 14 allegedly infringing wireless components.  But this fact

11:21:22 15 isn't even alleged in the complaint.  Actually in

11:21:24 16 plaintiff's opposition brief they ask the Court to infer

11:21:27 17 that from unrelated allegations in the complaint.  So this

11:21:30 18 particular allegation we would submit cannot even be

11:21:34 19 considered on a motion to dismiss, but even if it were to be

11:21:37 20 considered, the fact that the defendants engaged in due

11:21:40 21 diligence standing alone doesn't plausibly suggest, for

11:21:44 22 example, that as the willfulness -- as the willful blindness

11:21:47 23 standard requires that the defendants had taken deliberate

11:21:51 24 actions to avoid learning of the asserted patents and the

11:21:54 25 alleged infringement.

11:21:55 1          The allegation concerning due diligence is

11:21:58 2     entirely conclusory, it's purely speculative and for those

11:22:01 3     reasons alone they should be rejected under the *Iqbal* and

11:22:06 4     *Twombly* standards.  But then plaintiff goes further and they

11:22:09 5     argue that one deficiency and facility to claim willfulness

11:22:11 6     will be remedied if it just got to the discovery phase, but

11:22:14 7     the Third Circuit *Allscripts Healthcare* case that Samsung

11:22:19 8     cites on page 8 of its reply, I know that case is replicated

11:22:23 9     in the other defendants' briefs, along with other decisions

11:22:25 10    in this district make clear that a plaintiff isn't excused

11:22:29 11    from pleading its claims with plausibility where information

11:22:33 12    potentially relevant to those claims may be solely within

11:22:35 13    the defendant's possession which is true in virtually every

11:22:39 14    patent case.

11:22:40 15          And the cases that plaintiff points to, and this

11:22:42 16    is on page 14 of its opposition brief at note 5, none of

11:22:46 17    those cases would allow the plaintiff to avoid the

11:22:49 18    plausibility standard, move forward on deficient claims and

11:22:51 19    then backfill those deficiencies through discovery.

11:22:56 20          So unless Your Honor has any questions about the

11:22:58 21    substance of plaintiff's claims, I'll move on to the second

11:23:01 22    point which is the knowledge that potentially is derived

11:23:03 23    from the complaint itself.

11:23:06 24          THE COURT:  Okay.

11:23:07 25          MR. REISBERG:  So on that particular point as

11:23:11 1   defendants articulated in their brief, the complaint itself

11:23:14 2   cannot create a wilfulness claim where the plaintiff has

11:23:19 3   failed to plausibly allege pre-suit notice of the asserted

11:23:23 4   patents and the alleged infringement.

11:23:24 5           Now there is a split of judges in this district,

11:23:29 6   numerous judges have held that the complaint cannot create a

11:23:33 7   claim for willfulness.  For example, Judge Andrews --

11:23:34 8           THE COURT:  I'm not one of them, so you don't

11:23:38 9   have to tell me that Judge Connolly and Judge Andrews have

11:23:41 10  found otherwise.  I know that.  But I'm not one of the

11:23:44 11  judges who has found that as a blanket statement.

11:23:49 12          MR. REISBERG:  Absolutely.

11:23:51 13          THE COURT:  I have a lot of complaints in

11:23:55 14  certain circumstances to form the basis for knowledge for

11:23:57 15  notice.

11:23:58 16          MR. REISBERG:  I'll certainly be brief in my

11:24:01 17  argument on this particular point.  I am aware that Your

11:24:04 18  Honor in the *Dodots Licensing v. Lenovo* case permitted a

11:24:09 19  claim of indirect infringement to go forward where the

11:24:12 20  amended complaint pleaded that the defendant had knowledge

11:24:14 21  of the asserted patents and the allegations of infringement

11:24:17 22  from earlier pleadings and yet the defendant continued their

11:24:21 23  marketing activities.

11:24:22 24          All I'll say on this point to be brief is that

11:24:25 25  Judge Andrews did recognize the distinction between

11:24:27 1   wilfulness, which he characterized as a rare exception in

11:24:31 2   patent cases, versus other types of patent claims like

11:24:33 3   indirect infringement which might be supportable through

11:24:36 4   allegations directly in the pleadings.  But beyond that, I

11:24:40 5   will --

11:24:40 6              THE COURT:  I have done that with wilfulness as

11:24:43 7   well.  And I take your point.  I mean, what are the odds

11:24:50 8   that wilfulness would result in anything in a case where the

11:24:54 9   only allegations are that you continued to do what you did

11:24:59 10  as you defended a lawsuit?  I completely understand that,

11:25:03 11  but I haven't yet taken the blanket position that it's not

11:25:07 12  sufficient for wilfulness or indirect infringement.

11:25:12 13             MR. REISBERG:  Understood.  With that the only

11:25:15 14  other point I wanted to make is with respect to past

11:25:18 15  damages, so I will defer to my colleague.

11:25:21 16             THE COURT:  Great.  Thanks.

11:25:22 17             Mr. Kelley, is this you, too?

11:25:27 18             MR. KELLEY:  Yes, this is me, also.

11:25:32 19             Really the allegations about wilfulness are

11:25:35 20  based on inferences from the facts of disclosures to Apple

11:25:41 21  -- excuse me, disclosures to Qualcomm and Intel.  Obviously

11:25:42 22  this has been an ongoing process and we have learned more

11:25:50 23  since we filed the complaint, specifically as noted in

11:25:55 24  Apple's, one of its briefs that Apple acquired the Intel

11:26:00 25  mobile chip business in 2019 such that the former employees

of Intel became Apple employees and carried the knowledge with them.

Our allegation of wilfulness is based upon the concept that these products are very carefully engineered, every aspect of them is disclosed to Apple, and so that in accordance with normal supplier relationships, any sorts of patent things would be indemnified and disclosed in issues with patent infringement. Do we have copies of those agreements? No, we don't. They aren't public at all. But it's a plausible inference that the knowledge that Qualcomm in particular had with respect to TOT's patents and how it was violating them would have been communicated to the defendants in the course of specifying and then selling those chips.

THE COURT: Okay.

MR. REISBERG: Just a response, Your Honor, briefly?

THE COURT: Sure.

MR. REISBERG: None of what my colleague just mentioned is in the complaint. And case law is very clear that a plaintiff cannot fix deficiencies in a pleading through briefing or oral argument on a motion to dismiss. We cited a number of cases in our opening and reply brief that specifically hold that disclosures to a third party cannot be imputed to a defendant for purposes of charging

the defendant with actionable knowledge.  This is the
*Midwest Energy* case that we cite in our opening brief at
page 6, the *Varian* case from Magistrate Judge Burke which
held that there is no imputation to a subsidiary based on
disclosure to a patent.  The allegation is threadbare in its
allegation of disclosures.  It doesn't allege that the
patents were disclosed to Qualcomm, all that the plaintiff
says is that the alleged inventions were disclosed.

In the brief, in plaintiff's opposition brief
they articulate only that the techniques of the alleged
invention were disclosed.  Again, even if there was some
disclosure to Qualcomm, there is no plausible inference that
any disclosure to Qualcomm resulted in any of the defendants
becoming aware of the asserted patents or allegations of
infringement.

THE COURT:  Why don't you move to the pre-suit
notice.  So essentially what we have here is they're saying
look, there is nothing for us to mark, so what's the
problem?

MR. REISBERG:  Absolutely.  And the point about
past damages is simply that there is nothing in the
complaint that pleads compliance with the marking statute,
35 USC 287.  It's not a technical point that places form
over function as the plaintiff contends.  In fact, Judge
Andrews in the *Express Mobile* case held that when you need

11:29:02  1    to plead compliance, even if it's a nullity.  So the

11:29:05  2    plaintiff recognizes this, the plaintiff recognizes that

11:29:08  3    it's happy to amend if the Court requires it, although it's

11:29:13  4    their obligation to amend.  It's not for the defendants to

11:29:18  5    say all right, no harm, no foul, you're right, we're putting

11:29:22  6    form over function.  The rules are what the rules are and

11:29:24  7    one of the rules is pleading compliance with the statute.  I

11:29:28  8    can point to no case or rule of civil procedure that permits

11:29:31  9    it to disregard its obligation under the marking statute

11:29:35 10    based on some unilateral decision that they made that doing

11:29:38 11    so places function over form.

11:29:40 12                THE COURT:  Okay.

11:29:42 13                MR. KELLEY:  Your Honor, if I my address that?

11:29:45 14                THE COURT:  Go ahead.

11:29:46 15                MR. KELLEY:  It seems kind of a silly thing to

11:29:49 16    argue about since there was nothing to mark.  And Judge

11:29:52 17    Andrews' opinion in *Express Mobile* is the only thing I could

11:29:55 18    find that established this requirement.  He relied on the

11:29:59 19    two --

11:29:59 20                THE COURT:  But why doesn't it make sense?  I

11:30:02 21    mean, otherwise it's kind of left out there, are they on the

11:30:02 22    hook for pre-suit things?  Are they not?  I mean, there is a

11:30:15 23    reason it makes sense to do what Judge Andrews suggested in

11:30:20 24    *Express Mobile*, right?

11:30:22 25                MR. KELLEY:  Yes, I understand the logic of it,

11:30:25 1   but the decision he based it on which was a Federal Circuit

11:30:29 2   2017 decision in *Arctic Cat* said that the defendant, the

11:30:35 3   person challenging markings had the initial burden to

11:30:39 4   identify products that should have been marked but were not.

11:30:44 5   And I've always proceeded under the impression that that

11:30:49 6   carried through in the pleading stage.  If we want to allege

11:30:56 7   a nullity by amending the complaint, we're happy to do that,

11:31:01 8   but it seems inconsistent with *Arctic Cat*, but it doesn't

11:31:06 9   matter in this particular case.

11:31:09 10          THE COURT:  Okay.  All right.  So just give me a

11:31:19 11  second here to gather my thoughts.

11:31:23 12          (Pause.)

11:31:47 13          THE COURT:  All right.  Thank you for the

11:31:48 14  arguments.  I have before me three motions to dismiss, one

11:31:52 15  filed by each of the defendants.  Samsung and LG seek to

11:31:56 16  dismiss the claims of wilfulness and related enhanced

11:31:58 17  damages as well as pre-suit damages.  Apple seeks to dismiss

11:32:03 18  those claims as well as claims of infringement.  I am going

11:32:06 19  to grant the motion.

11:32:07 20          As to direct infringement, the allegations are

11:32:08 21  that Apple directly infringes by making, using and selling

11:32:12 22  and offering to sell unspecified mobile products that

11:32:16 23  contain components which practice the invention claimed in

11:32:19 24  the patent.  There is no well-pleaded allegation that

11:32:22 25  identifies Apple products.  And I agree that the allegations

11:32:27 1   which do have examples say including but not limited to a

11:32:33 2   broad range of processors made by two large companies.  And

11:32:39 3   that is insufficient.

11:32:41 4          As to the method claims, there is no

11:32:43 5   well-pleaded allegation that Apple uses the products, or

11:32:47 6   uses the patented methods by practicing each of the steps,

11:32:50 7   and so I don't think that plaintiff has met even the

11:32:54 8   relatively low threshold for sufficiency under *Disc Disease*

11:32:59 9   with respect to allegations.

11:33:00 10          With respect to the claims for making, selling

11:33:02 11   and offering for sale method claims, there is no basis to

11:33:05 12   assert infringement, so any claims based on those are

11:33:09 13   dismissed.

11:33:10 14          With respect to wilfulness and the related

11:33:13 15   enhanced damages, there are no well-pleaded allegations of

11:33:17 16   knowledge.  The most that can be said is that the inventions

11:33:21 17   of the patent, so specifically it does not say the patents,

11:33:25 18   were disclosed to others as in not the defendants.  And

11:33:28 19   plaintiff then says that defendants should have known about

11:33:32 20   those disclosures.  This is far from alleging knowledge of

11:33:35 21   the patents and knowledge of infringement of the patents

11:33:38 22   which are required for wilfulness.  And plaintiff has not

11:33:42 23   cited me any cases in which similar allegations of

11:33:45 24   wilfulness are sufficient to allow wilfulness to go forward.

11:33:48 25          Finally, we have the issue of marking and

pre-suit damages, or pre-notice damages.  Under § 287(a),
any patented article must be marked to provide notice to the
public that the article is patented.  If a patented product
is not marked, infringement damages are unavailable unless
the patentee provides proof that the infringer was notified
of the infringement and continued to infringe thereafter in
which event damages may be recovered only for infringement
occurring after the notice.  The patentee bears the burden
of pleading and proving he complied with § 287(a) marking
requirements.  And as Judge Andrews held in the *Express*
*Mobile* case, compliance must be pled even when there is no
evidence of anything to mark.

I take plaintiff's point with respect to the
essential effect of pleading a nullity, but I think that the
logic of *Express Mobile* makes sense.  And here, plaintiff
has not alleged that it marks products or that it does not
need to mark its product, so I'm going to grant the motion.

So I have granted the three motions to dismiss.
I am doing so, however, without prejudice because I cannot
say that it's not possible for the plaintiff to amend.
Plaintiff, if you do so, however, you need to be more
specific as to what products are accused of infringement,
what chips if you say are infringing are accused of
infringement, and it can't simply be any old chip that Intel
or Qualcomm has given to Apple.  So you need to be more

11:35:28 1    specific with respect to products as well as the allegations

11:35:31 2    that Apple's use infringes if you intend to go forward on

11:35:37 3    those method claims.

11:35:38 4            I am also not going to address the arguments

11:35:41 5    that the original complaint cannot serve as a basis for

11:35:45 6    wilfulness.  As I already stated, I have in certain

11:35:49 7    circumstances allowed the plaintiff to do so and I just

11:35:51 8    can't tell based on what I have or what plaintiff may later

11:35:54 9    assert whether it would be appropriate in this case.

11:35:57 10            Now, I have Apple's motion to transfer.  I think

11:36:03 11    given that I have now dismissed the complaint that that

11:36:07 12    motion is moot.  But let me give you my thoughts on it to

11:36:12 13    the extent that plaintiff would seek to amend.

11:36:17 14            So first, plaintiff should know that the motion

11:36:20 15    if properly supported may have some merit.  There are

11:36:24 16    seemingly few ties to Delaware, so you're going to have to

11:36:29 17    address that a little better than you did in the current

11:36:32 18    briefing.

11:36:33 19            But second, Apple should know that I don't think

11:36:37 20    that the concerns raised in Texas are irrelevant.  The basis

11:36:42 21    on which I would consider granting the motion is tied to the

11:36:47 22    assertions that were made in the declaration that was

11:36:49 23    submitted to me, the declaration that if we didn't have that

11:36:51 24    declaration the motion would be denied.

11:36:55 25            And I do have concerns about the competency of

11:36:59  1    the declaration in view of the many, many, many cases that

11:37:04  2    were cited in the West Texas opinion suggesting that the

11:37:11  3    competency of the declarant and the knowledge of those

11:37:16  4    issues may not be what it would at first blush seem.  So if

11:37:22  5    there is an amended complaint and a renewed motion to

11:37:25  6    transfer, Apple should expect that any declarant will be

11:37:30  7    deposed to test the sufficiency of the assertions made in a

11:37:35  8    declaration.

11:37:36  9            So that's my ruling.  I think that addresses all

11:37:40 10    of the motions that I have pending before me.  Is there

11:37:43 11    anything else that we need to discuss?

11:37:46 12            For the plaintiff?

11:37:50 13            MR. KELLEY:  Yes, Your Honor.  This is Walter

11:37:52 14    Kelley.  How long do we have to file the amended complaint?

11:37:55 15            THE COURT:  Two weeks.

11:37:56 16            MR. KELLEY:  Okay.  Fourteen days?  Understood.

11:38:00 17            THE COURT:  That is usually what two weeks is,

11:38:03 18    yes.

11:38:04 19            Anything else?

11:38:07 20            MR. KELLEY:  No, not from plaintiff.

11:38:09 21            THE COURT:  All right.  How about from Apple?

11:38:12 22            MR. BIGGS:  Your Honor, this is Brian Biggs on

11:38:18 23    behalf of Apple.  Nothing else from Apple and nothing --

11:38:22 24            THE COURT:  Thank you, Mr. Biggs.

11:38:24 25            And what about Samsung?

11:38:27  1              MR. REISBERG:  Nothing else from Samsung.  Thank

11:38:29  2      you.

11:38:29  3              THE COURT:  All right.  Thank you, everyone.

11:38:31  4      Enjoy the rest of the week.

          5                  (Teleconference concluded at 11:38 a.m.)

          6

          7              I hereby certify the foregoing is a true and
             accurate transcript from my stenographic notes in the proceeding.
          8

          9                              /s/ Dale C. Hawkins
                                       Official Court Reporter
         10                              U.S. District Court

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25